UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF KENTUCKY

NORTHERN DIVISION

ASHLAND

Civil Action No. 17-135-HRW

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY,                    PLAINTIFF /
                                               COUNTER- DEFENDANT,


v.          **MEMORANDUM OPINION AND ORDER**


JOHNNY E. BOLIN
a/k/a JOHNNY BOLIN,                            DEFENDANT /
                                               COUNTER-PLAINTIFF.


   This matter is before the Court upon the parties' cross Motions for Summary

Judgment [Docket Nos. 35 and 36]. For the reasons set forth herein, the Court finds that the

Plaintiff Metropolitan Property and Casualty Insurance Company is entitled to judgment as a

matter of law.

**I.**

   This action for declaratory judgment arises from a fire on the property of Defendant

Johnny E. Bolin a/k/a Johnny Bolin in West Liberty, Kentucky.

1

**A.  The Fire**

The fire occurred on November 25, 2016, while Bolin claims he was out of town, and destroyed his mobile home on 2224 Jones Creek Road, as well as its contents. The cause of the fire was classified as "undetermined."

**B.  The Policy**

At the time of the fire, Bolin had a Homeowners Policy issued by Metropolitan Property and Casualty Insurance Company ("Metropolitan"), Policy No. 4880443700 with an effective term of December 9, 2015 to December 9, 2016. A copy of the policy is in the record at Docket No. 36-2.   The policy offered up to $305,500 for dwelling coverage and $213, 850 for personal property.

Under General Conditions, the policy contains a "Concealment or Fraud" clause which explicitly voids all coverage if the insured misrepresents any material fact relating to the loss:

> 2. **Concealment or Fraud**. If any person defined as you conceals or misrepresents any material fact or circumstance or makes any material false statement or engages in fraudulent conduct affecting any matter relating to this insurance or any loss for which coverage is sought, whether before or after a loss, no coverage is provided under this policy to any person defined as you **. . .**

[Docket No. 36-2, p. 40].

**C.  The Claim**

Following the fire, Bolin attempted to obtain proceeds from the aforementioned policy.  He submitted a Sworn Statement in Proof of Loss and Contents Claims Worksheets on April 6, 2017, in which he detailed his claimed dwelling loss and contents, purchase price and approximate date of purchase of same. [Docket Nos. 36-8 and 36-9].  He was aware that his representations made in his Sworn Statement in Proof of Loss as to the extent and value of his claimed loss were made under oath. [Examination Under Oath, May 9, 2017, Docket No. 26-2,  p. 31].

In his sworn statement, Bolin alleged that as a result of the fire he suffered a total loss of $750,000. [Docket No. 36-8].  He claimed that his trailer was worth $540,000.00 and its contents  $328,098. [Docket No. 36-9].

**D.  The Investigation**

While reviewing Bolin's claim, Metropolitan sought his records for any renovations and contents purchases, bank records and tax records.  It also requested that Bolin appear for an Examination Under Oath, which began on April 28, 2017, adjourned and reconvened on May 9, 2017. A transcript of Bolin's testimony is in the record at Docket No. 36-3.

Records revealed that Bolin was unemployed and received Social Security Disability benefits of approximately $1,200.00 per month; State Retirement Benefits of approximately $51.00 per month; a Teacher's Retirement of approximately $450.00 per month; and payment for maintaining a foster child of approximately $1,600.00 per month [Docket No. 36-3, pp. 9-13]. Bolin testified that he had no other sources of income, does not own any

3

stocks, retirement accounts, or other investments. *Id.* He maintained bank accounts at Citizens Bank and had previously banked at First National Bank. *Id. at* p. 31, 95. He has no other savings or checking accounts. *Id.* Bolin does not use credit cards. *Id.* He has twice previously filed for Bankruptcy, in 1990 and in 2000. [Docket Nos. 36-4 and 36-5].

Despite his modest financial condition, Bolin claims that the trailer on his property was worth roughly half a million dollars. He purchased the mobile home in March 1999, for $62,000.00. [Docket No. 36-6]. He stated under oath that Grady Kegley of Kegley Real Estate had previously performed two separate appraisals of the dwelling and valued the it at between $325,000 and $375,000 in each of these appraisals. [Docket Bo. 36-3, p. 85, 86, 88-89]. That is false. Mr. Kegley, a Certified Residential Appraiser did, in fact, appraise the subject property on two occasions, and in each instance issued a detailed report of his valuation. [Docket No. 36-10]. However, Kegley did **not** appraise the structure at Bolin's claimed $540,000.00 **nor** did he appraise it at $375,000.00 **or** $325,000. Kegley appraised the property, inclusive of the 68 acres of land, at only a fraction of that value, $208,000 in 2009 and $191,000 in 2012. [Docket No. 36-10]. *See also*, Deposition of Ervin Kegley, Docket No. 36-12.

Bolin contends that he performed extensive renovations and built an addition to the mobile home, increasing its value three-fold. He testified that he spent $359,000.00 to purchase materials and supplies for the renovation of his $62,000 mobile home. While Bolin claims that he may have paid for some of the materials with cash from his safety deposit box, he also confirmed that, "at the same time I wrote checks and checks." [Docket No. 36-3, pp. 47-48]. He testified that, in regard to his purchase of supplies and materials for his

4

remodeling, "for the most part, I pretty much paid them with check." *Id.* at p. 94. Specifically, he testified to have written checks of $5,000.00 and $2,500.00 to Wayne Gevedion. Bolin claims to have written large checks to Valley Metal and FS Vanderhouse , a $19,000.00 check to Dwight's Lumber, checks for between $7,000.00 and $10,000.00 for the block foundation of his renovation, a check to H.H. Gregg for $3,300.00, checks for $11,000.00 and $33,000.00 to Maysville Furniture, and checks or debit card outlays to Lowes for $2,200.00, $1,000.00, and $2,120.00, outlays for Christmas decorations to Lowes in two lump sums of $4-5,000.00 and $4,400.00, a check to Whites Lumber for over $24,000.00 and another check to Whites lumber for $19,000.00.

However,  Bolin's banking records demonstrate that each of these above affirmative assertions are false. No such checks exist or were ever written on any of his accounts. [Docket No. 36-14].  Nor are there any records from any of these points of purchase supporting Bolin's claims of such extensive purchases.

Bolin's contents claims are also perplexing. He stated that  he spent roughly $300,000.00 in contents purchases between 2010 and 2016. For example, he testified that he spent almost $10,000.00 on Wrangler Jeans over the course of a few years. [Docket No. 36-3, p. 167]. He claims 75 belts, allegedly purchased for $5,963, ten pairs of shoes purchased for $5,300 – at an average cost of $530 per pair. *Id.*at  p.170.

He further claims that, within the last three years before this fire, he purchased five leather coats for $4,240, three leather coats for $887, two mid-length leather coats for $1,227, three casual leather coats for $422, a full-length leather coat for $953 and a Harley leather coat for $773. *Id*.

5

He also claims that, within the last two years before the fire, he had purchased 100 men's casual shirts for $6,360 and 60 polo shirts for $5,724. *Id.* at p.170.

However, as with the renovations, no documents exist proving these purchases – no receipts, no cancelled checks.  The record is replete with additional claims by Bolin with corresponding evidence, or lack thereof, refuting the same.  The Court need not recount each and every contradiction. Yet, he offered no explanation as to why the records of his banks and merchants he allegedly did much business with do not support his claimed expenditures. Indeed, he admits that the records are against him.  When asked, under oath, to reconcile the discrepancies between his claims and the evidence, he replied "I can't." [Docket No. 36-3, p. 63].  When asked to explain why his banks have no record of the numerous checks he wrote for the renovation of his trailer, he responded "[t]here is something wrong sir. I don't know." *Id.* at p. 47.

### E.  The Declaratory Judgment Action

Pursuant to 28 U.S.C. § 2201, Metropolitan filed this lawsuit seeking a declaration of its rights and obligations arising from the contract of insurance  entered into between itself and Bolin. [Docket No. 1]. It relies upon the "Concealment or Fraud" in its policy in asserting that it is not obligated to provide coverage to Bolin.

Bolin filed a counterclaim, asserting breach of contract, as well as bad faith.[1] [Docket No. 9].

The parties have filed competing motions for summary judgment.

---

[1]  Bolin's bad faith claim is being held in abeyance, pending resolution of the coverage issue. [Docket No. 16].

## II.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Abeita v. TransAmerica Mailings, Inc.,* 159 F.3d 246, 250 (6th Cir.1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The standard of review for cross-motions of summary judgment does not differ from the standard applied when only one party files a motion. *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir.1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits." *Id.* (citations omitted). Thus, when the court reviews cross-motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506-07 (6th Cir.2003).

### III.

Kentucky law provides that "the rights of parties to an insurance policy are to be determined exclusively by the terms of the policy, unless contrary to existing law or public policy." *Interstate Ins. Group v. Musgrove*, 11 F. App'x 426, 427-28 (6th Cir. 2001). Thus, where the words of an insurance policy are clear and unambiguous, those terms "should be given their plain and ordinary meaning." *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky. 1999). Here, there is no suggestion that the terms of the insurance policy with are contrary to Kentucky law; the Court will therefore enforce the agreement as written.

Indeed, the clause upon which Metropolitan relies in seeking to void the policy has been approved by the Kentucky Court of Appeals as well as this Court.  For example, in *The Home Ins. Co. v. Hardin*, 528 S.W.2d 723 (Ky. Ct. App. 1975), the Kentucky Court of Appeals court held that the concealment and fraud provisions applied, and "a sworn proof of loss which includes numerous nonexistent items voids the entire policy as a matter of law." *Id.* at 725.  *See also Parks v. State Farm Fire and Cas. Co.,* Civ. No. 11-64-ART, 2012 WL 3835837 (E.D.Ky. Sept. 4, 2012) (finding that the insured's claims of property purchases in excess of income, known by investigators, was valid grounds for voiding the policy); *Baymon v. State Farm Ins. Co.,* 257 Fed. Appx. 858, 860-61 (6th Cir. 2007) (finding that an insured's misrepresentations regarding mortgage debt and a pending foreclosure action voided the policy).

Metropolitan has introduced a bevy of evidence that Bolin made misrepresentations pertaining to his insurance claim.  The contradictions are critical because the policy's "concealment or Fraud" clause voids the policy where the insured conceals or misrepresents facts material to his claim.

Incredibly, Bolin has no explanation whatsoever regarding the lack of supporting documentation for his claim.  Instead, he contends that Metropolitan bears the burden of proving that the value of his loss is different than the limits of coverage in his policy. This is the opposite of what Kentucky law requires. It is well-settled that it is Bolin who bears the burden to prove the existence, possession, purchase and value of the property he claims to have lost in the fire. *See generally*, *New York Underwriters' Ins. Co. v. Mullins*, 52 S.w.2d 697 (Ky. 1932).

Bolin also maintains that  the "disagreement" as to the value of his home and contents goes to the amount of coverage, not the existence of coverage. Again, Bolin misunderstands

9

the law.   Absent ambiguity or public policy concerns, neither of which are present here, the language of the policy dictates. Here, the clear language of the policy provides that the entire policy is void if Bolin concealed or misrepresented a material fact or circumstance or if he made a materially false statement or engaged  in fraud. At a minimum, the record establishes that Bolin made false statements material to his claim, which, thereby renders the policy void.

Moreover, the Court notes that the policy as written does not require the misrepresentations to be willful or intentional.  Contrary to what Bolin suggests, proof of intent is not required unless the policy specifies that such proof is requisite.    The Sixth Circuit arrived at the same conclusion in *Interstate Ins. Group v. Musgrove*,  2001 WL 406434 (6th Cir. 2001).   In *Musgrove*, the Sixth Circuit upheld summary judgment in favor of Interstate Insurance Group because its insured made false statements in the presentation of the claim. In granting judgment in favor of the insurer, the Judge Jennifer Coffman of Eastern District of Kentucky Court interpreted disjunctive policy language, similar to that in the case at hand, that permitted the insurer to void the policy if the insured had:

> a) Intentionally concealed or misrepresented any material fact or circumstance;
> b) Engaged in fraudulent conduct; ***or***
> c) Made false statements relating to this insurance.

*Id*. at 427 (emphasis added). Applying this language to the facts of the claim, the Sixth Circuit Court noted that it was undisputed that the insured made false statements to the adjustor during the investigation of the claim. *Id*. at 428.  The Court did not require a finding that the insured **intentionally** engaged in a material misrepresentation. *Id.* Rather, the Court

found that it was sufficient that the statements made were, in fact, false. *Id.* The Court concluded that the policy was void and that Interstate Insurance Group, owed no obligation to pay the claim. *Id.*

Such is the case here. The record is replete with misrepresentations made by Bolin which go the very heart of his claim. He cannot refute or explain them. Under its explicit terms, the policy is void and Metropolitan owes no coverage to Bolin.

Bolin has failed to demonstrate a genuine issue for trial. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp. .,* 475 U.S. 574, 586–87 (1986) (non-moving party survives a motion for summary judgment only by establishing a "genuine issue of material fact"). "There is something wrong sir. I don't know" falls short of even "metaphysical doubt as to the material facts"—and is wholly insufficient effort to escape summary judgment. *Id. See also, Alexander v. CareSource,* 576 F.3d 551, 558 (6th Cir.2009) ("[T]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." (internal quotation omitted)).

**IV.**

Accordingly, **IT IS HEREBY ORDERED** that that Plaintiff and Counter-Defendant Metropolitan Property and Casualty Insurance Company's Motion for Summary Judgment [Docket No. 36] be **SUSTAINED** and Defendant and Counter-Plaintiff Johnny E. Bolin a/k/a Johnny Bolin's Motion for Summary Judgment [Docket No. 35] be **OVERRULED.**

This 7th day of August 2020.



**Signed By:**

**Henry R Wilhoit Jr.**

**United States District Judge**

12